# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ZIPIT WIRELESS, INC.,

      Plaintiff,

      v.

BLU PRODUCTS, INC.;
GOOGLE LLC;
MOTOROLA MOBILITY LLC;
NOKIA OF AMERICA CORPORATION;
PANASONIC CORPORATION OF
AMERICA;
SONY MOBILE COMMUNICATIONS (USA)
INC.; and
TTE TECHNOLOGY, INC. (d/b/a TCL
NORTH AMERICA and TCL USA).

      Defendants.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Zipit Wireless, Inc., for its Complaint against Defendants BLU Products, Inc., Google LLC, Motorola Mobility LLC, Nokia of America Corporation, Panasonic Corporation of North America, Sony Mobile Communications (USA) Inc., and TTE Technology, Inc. (d/b/a/TCL North America and TCL USA), alleges as follows:

## INTRODUCTION

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

## THE PARTIES

2.      Plaintiff, Zipit Wireless, Inc. (hereinafter "Zipit") is a Delaware Corporation with a principal place of business located at 101 North Main Street, Suite 201, Greenville, South Carolina 29601.

3.      On information and belief, Defendant BLU Products, Inc. is a Delaware corporation.  On information and belief, Defendant BLU Products, Inc.'s registered agent is The Company Corporation, 251 Little Falls Drive, Wilmington, Delaware 19808.

4.      On information and belief, Defendant Google LLC is a Delaware limited liability company.  On information and belief, Defendant Google LLC's registered agent is The Company Corporation, 251 Little Falls Drive, Wilmington, Delaware 19808

5.      On information and belief, Defendant Motorola Mobility LLC is a Delaware limited liability company.  On information and belief, Defendant Motorola Mobility LLC's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.      On information and belief, Defendant Nokia of America Corporation is a Delaware corporation.  On information and belief, Defendant Nokia of America Corporation's registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7.      On information and belief, Defendant Panasonic Corporation of North America is a Delaware corporation.  On information and belief, Defendant Panasonic Corporation of North America's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

8.     On information and belief, Defendant Sony Mobile Communications (USA) Inc. is a Delaware corporation.  On information and belief, Defendant Sony Mobile Communications (USA) Inc.'s registered agent is Capitol Services, Inc., 1675 S. State Street, Suite B, Dover, Delaware 19901.

9.     On information and belief, Defendant TTE Technology, Inc. (d/b/a TCL North America and TCL USA) is a Delaware corporation.  On information and belief, Defendant TTE Technology, Inc.'s registered agent is Business Filings Incorporated, 108 West 13th Street, Wilmington, Delaware 19801.

**JURISDICTION**

10.     This Court has subject matter jurisdiction over all causes of action set forth herein pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §271 *et seq*.

11.     Defendants are in the business of supplying instant messaging devices, such as smartphones, in and throughout the United States, including in this State and in this judicial district.

12.     This Court may properly exercise personal jurisdiction over each of the Defendants.

13.     Defendants have solicited business in this State, transacted business within this State and attempted to derive financial benefit from residents of this State, including benefits directly related to the instant patent infringement cause of action set forth herein.

14.     Defendants have made, used, sold, offered for sale, and/or imported instant messaging devices or wireless mobile communications devices, such as smartphones, in this judicial district and/or have placed such phones into the stream of commerce with the knowledge and intent that such phones have been offered for sale, sold, and/or used in this State and this

judicial district.  On information and belief, Defendants' customers in this State have purchased and used and continue to purchase and use Defendants' products.

15.     At the time of filing of this Complaint, Defendants' smartphones are available for purchase by consumers in this State, including within this judicial district.

16.     This Court has personal jurisdiction over Defendants because: (i) Defendants have and continue to intentionally sell products and methods, including the infringing methods, to customers in this State; (ii) Defendants have and continue to intentionally instruct customers and potential customers in this State with respect to how to use the products and methods that Defendants sell to customers in this State; (iii) Defendants know and have known their products and methods, including the infringing methods, have and continue to be sold and marketed in this State; (iv) Defendants know and have known that their manufactured products and methods will enter the United States of America and this State; (v) Defendants have and continue to target customers and potential customers in this State to buy and/or use Defendants' products and methods, including the infringing methods; (vi) Defendants have and continue to provide advice to customers in this State; (vii) it has been and continues to be foreseeable that Defendants' products and methods, including the infringing methods, would enter this State; (viii) Defendants have and continue to market to citizens of this State through their respective websites; (ix) Defendants have and continue to provide services to citizens of this State through their respective websites; (x) Defendants derive substantial revenue from this State; (xi) this State has and continues to be part of Defendants' established distribution channels; (xii) the assertion of personal jurisdiction over Defendants is reasonable and fair; (xiii) and this State has an interest in this matter due to the presence of Defendants' products and methods, including the infringing methods, in this State.

17.     Venue is this district is proper pursuant to 28 U.S.C. §1331, §1338, §1391, and

§1400 at least because Defendants are Delaware entities and Defendants have committed acts of

infringement in this judicial district.

## BACKGROUND

## Zipit's Technology

18.     Zipit has and continues to offer for sale Wi-Fi based instant messaging solutions.

Zipit's first product, the Zipit Wireless Messenger:



was introduced in 2004 and was sold through major retailers including Target, Best Buy, Radio

Shack, and Amazon and received press coverage in the Chicago Tribune, the New York Times,

and many media outlets.

19.     In 2007, Zipit introduced its second-generation Wi-Fi based instant messaging

device known as "Z2":



20.     In 2011, Zipit launched an enterprise messaging solution in conjunction with a major U.S. cellular carrier and is actively selling this solution into healthcare, hospitality, ems, manufacturing, utility, and government accounts.  Zipit's solution has been deployed in over 250 enterprise customers across the U.S. and Zipit's customer base continues to grow monthly.

## Zipit's Awards And Notoriety

21.     In 2005, *Time Magazine* awarded Zipit's first Wi-Fi instant messaging device ("Zippy") Time's "The Most Amazing Inventions of 2005" Award:



To determine the award winners, Time Magazine "spent more than six months surveying fields as diverse as electronics, aeronautics, medical technology, sports equipment, toys, clothing and food looking for the newest-and most inspired-ideas of the year."

22.     Zipit's "Zippy" instant messaging device also won an award from iParenting Media in 2006.

23.     Zipit's "Zippy" Wi-Fi instant messaging device also received praise and acclaim in media across the United States and the World in at least the Chicago Tribune "Zipit is king of messengers" (March 3, 2005); the New York Times "Making an Easy Task, Instant Messaging, Even Easier." (March 10, 2005); the New York Times "Making an Easy Task, Instant Messaging, Even Easier." (March 21, 2005) (Online Edition); the Austin American-Statesman "Gadgets: … Instant messaging with no extra charges" (March 21, 2005); ABC12.com "Zipit Wireless Messenger" (Aug. 15, 2005); ABC12.com "Zipit Wireless Messenger" (Aug. 22, 2005); The Greenville News (Dec. 5, 2004); Parade "a brilliant little device" (April 24, 2005); Univision.com; ym.com "What's Hot: March 15, 2005" (March 17, 2005); Gizmodo "Perfect for

the IM addict" (July 19, 2005); Gizmodo "Teacher's Worst Nightmare - Aeronix ZipIt" (Sept. 29, 2005); HeraldToday.com ("Zipit rules wireless messenging world") (March 10, 2005); HUB: Digital Living (March 2005); New York Daily News "Hot, hotter, hottest: The Definitive guide to who and what is sexy right now" "Gadgets" (April 3, 2005); and the St. Petersburg Times "2005 Annual Gadget Guide From Apple to Zipit" "For the good times" (Nov. 28, 2005).

24.    Zipit's second version of its Wi-Fi instant messaging device, "Z2," also was widely praised and acclaimed.  In 2007, PC Magazine awarded Zipit's "Z2" the "Winner" of its "Best of Show" award at the Digital Life show in the category of "Portable Gear."  Zipit's "Z2" also won another award from iParenting Media in 2008.

25.    Zipit's "Z2" Wi-Fi instant messaging device, also was praised in at least the following media sources: PC Magazine DigitalLife 2007 "Best of Show" (Sept. 28, 2007); DigitalLife's "Best of Show Award" (Oct. 2, 2007); 2013 iParenting Media Awards – Winner – Zipit Wireless Messenger 2 (April 30, 2008); 2014, Video – Z2 Highlight Reel (The Today Show; USA Today; Associated Press Article; The Washington Post; The Boston Globe; Houston Chronicle; The Philadelphia Inquirer; The Kansas City Star; The Miami Herald; San Francisco Chronicle; Orlando Sentinel; Rocky Mountain News; ABC Television Channel 7; CNN Television; FOX News FOX & Friends; The New York Times; Pittsburgh Post-Gazette; MTV Television; Yahoo! Tech; CNET; eva; The Montel Williams Television Show; NBC Channel 5; LINUX Journal; WNN Wi-Fi News; Digital Tech News'; Wireless Week; electronista; I40 News; Best stuff; FOX & Friends (2015); The Montel Williams Show (Dec. 6, 2006; WABC – New York Channel 7 (Dec. 17, 2006); FOX Business (March 19, 2008); The Today Show (Jan. 6, 2008);  MTV; The Detroit News – "In our opinion - Zipit Z2 perfect for kids" (June 30, 2008); the Akron Beacon, Ohio.com (April 14, 2008); the Arizona Star (April 3, 2008); the

BaltimoreSun.com (April 17, 2008); The Record NorthJersey.com "Kids and their parents will love the Z2 messaging device" (April 12, 2008); TheStreet.com "Instant Messaging With Mass Appeal" (Dec. 7, 2007); Digital Life "Digital Life Announces the DigitalLife Innovators Class of 2007" (Sept. 24, 2007); E-Gear "Is Anybody Out There" (April 9, 2008); Gizmodo "Zipit Z2 Wireless Messenger Lets Teens IM For Free" (Nov. 7, 2007); GoErie.com " Txt all d tym" "IM friends without tying up computer" (April 11, 2008); CBS4Denver.com "One of the best products for teens, tweens and their parents" (2007); InfoSyncWorld.com "Zipit Z2 Wireless Messenger sends IMs without PC or phone" "it has a dedicated smiley button, which we have never seen before, but now we want on our Treo :-)" (Nov. 7, 2007); InsignifacantThoughts.com (Sept. 28, 2007); KansasCity.com "Better Messages" (Dec. 6, 2007); LinuxDevices.com (Nov. 9, 2007); MiamiHerald.com (Oct. 18, 2007); ny1.com (Sept. 27, 2007); NYTimes.com (Oct. 4, 2007); PCMag.com.br (Sept. 28, 2007); PC.Watch.Impress.co.JP (Dec. 9, 2007); Yahoo! News (Sept. 27, 2007); Register Hardware UK (Nov. 7, 2007); SlashGear.com (Sept. 27, 2007); StarTelegram.com "High-tech hobbies" (Oct. 14, 2007); the Minneapolis StarTribune.com (Oct. 8, 2007); DailyHerald.com (June 23, 2008); The Gazette Canada.com (Oct. 11, 2007); TheStreet.com "Instant Messenger With Mass Appeal" "a must-have for travelers" (Dec. 7 2007); TimeforKids.com (Nov. 26, 2007); Twice.com (Sept. 27, 2007); ABCNews.com (Nov. 2, 2007); ABCNews: The Ultimate Gift Guide (Nov. 8, 2007); Adweek Magazine "Top 10 Trends of 2007" (Dec. 17, 2007); BlogStuff.com (Nov. 26, 2007); Blog-SciFi.com (Sept. 27, 2007); Brighthand.com (Sept. 30, 2007); CBS Tech Toys Review (Oct. 16, 2007); and The Charlotte Observer Charlotte.com (Oct. 21, 2007).

**Wi-Fi Instant Messaging Devices With Emoticons Drive Purchasing Decisions**

26.     Prior to the existence of Wi-Fi instant messaging, carriers typically charged up to $0.20 per text, or $20.00 per month for unlimited texting.  Thanks to Wi-Fi based instant messaging, however, consumers no longer had to pay for individual instant messages or monthly service plans.  As a result, by 2016, it was estimated that consumers saved $54 billion through the use of Wi-Fi instant messaging instead of from SMS-based instant messaging.

27.     Instant messaging has been and continues to be the single most important smartphone feature.  Indeed, many potential customers are unlikely to purchase a smartphone that is not able to generate an instant message comprising an emoji/graphical symbol (☺, ☹) that is sent over Wi-Fi.

28.     Using a handheld device, such as a smartphone, to send instant messages that contain emojis is a major and growing form of communication among an incredibly large demographic.  Indeed, this is reflected by Oxford Dictionary's "word" of the year for 2015, which was the "face with tears of joy" emoji:



Oxford Dictionary selected the emoji as its "word" of the year because the emoji was "the 'word' that best reflected the ethos, mood, and preoccupations of 2015."  It is further reflected by the creation of "World Emoji Day," which is held annually on July 17.

## ZIPIT'S PATENTS

29.    The United States Patent and Trademark Office awarded Zipit two patents on its highly acclaimed "Instant Messaging Terminal Adapted For Wi-Fi Access Points," U.S. Patent No. 7,292,870 and U.S. Patent No. 7, 894,837.

### Zipit's U.S. Patent No. 7,292,870

30.    On November 6, 2007, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,292,870, entitled "Instant Messaging Terminal Adapted For WI-FI Access Points." A true and correct copy of U.S. Patent No. 7,292,870 is attached hereto as Exhibit "A."

31.    Zipit is the owner, by assignment, of all right, title, and interest in and to U.S. Patent No. 7,292,870 (hereinafter the "'870 Patent"), including the right to sue for past, present, and future patent infringement, and to collect past, present, and future damages.

32.    The '870 patent complies with the Patent Act, including 35 U.S.C. §101, 35 U.S.C. §102, 35 U.S.C. § 103, and 35 U.S.C. §112.

33.    On July 16, 2013, the Patent Office issued a Certificate of Correction for the '870 patent. Exhibit "B."

34.    Each and every claim of the '870 patent is valid and enforceable.

35.    The '870 patent and its claims are entitled to the benefit of the date upon which Zipit filed its provisional patent application 60/532,000, which was filed on December 24, 2003.

36.    As the invention(s) claimed in the '870 patent were conceived no later than April 2003, the claims of the '870 patent are further entitled to a priority date of no later than April 2003.

**IPR2014-01507**

37.     On March 30, 2015, the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office instituted an *Inter Partes* Review ("IPR") of the '870 patent.

38.     On June 22, 2015, Zipit filed its "Patent Owner's Response Under 37 C.F.R. § 42.120."

39.     On March 29, 2016, the PTAB issued a Final Decision that confirmed the patentability of all claims of the '870 Patent in IPR2014-01507.

40.     All papers and pleadings filed with the PTAB for IPR2014-01507 are part of the prosecution history of the '870 Patent.  Due to their size and volume, the papers and pleadings filed with the PTAB for IPR2014-01507 are incorporated herein by reference.

**IPR2019-01567**

41.     On August 30, 2019, Google LLC *et al.* filed a Petition For *Inter Partes* Review of the '870 Patent, IPR2019-01567.

42.     On March 9, 2020, the PTAB instituted IPR of the '870 Patent.

43.     On June 2, 2020, Zipit filed a Response to the Petition, requesting the PTAB to deny the Petition.

44.     All papers and pleadings filed with the PTAB for IPR2019-01567 are part of the prosecution history of the '870 Patent.  Due to their size and volume, the papers and pleadings filed with the PTAB for IPR2019-01567 are incorporated herein by reference.

**No Claim Of Zipit's '870 Patent Is Abstract**

45.     The claims of the '870 Patent are focused on an advance over the prior art such that their character as a whole is not directed to excluded subject matter, such as an abstract idea,

or any other subject matter excluded under 35 U.S.C. §101.  For example, the claims of the '870 patent are directed to improvements in computer functionality.

46.     The PTAB determined that the combinations claimed in the claims of the '870 Patent were novel and nonobvious, as did the Patent Office during its initial review of the claims.

47.     The advancement claimed in the claims of the '870 Patent includes, *inter alia*, an instant messaging terminal and method that includes a housing, a display mounted in the housing, a data entry device that affords the generation of textual characters and graphical symbols, a wireless Internet protocol communications module, a wireless transceiver, and a control module that includes a processor for executing an application program to implement instant messaging and session protocols for a conversation.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  The claimed combination also improved the operation of computer functionality, overcoming various failures with existing computing devices as discussed in the Background of the Invention and the Summary of the Invention.

48.     For example, providing the claimed combination in a handheld terminal (as opposed to a desktop, laptop, or PDA requiring external peripheral data entry and/or display devices) represented a significant advance in computer functionality, including allowing both textual characters and graphical symbols to be entered/generated using a data entry device integrated into the handheld terminal.  This avoided the need for a platform to support the data entry device during data entry.  Furthermore, the claimed data entry device for generating/entering textual characters and graphical symbols improved the efficiency of computing devices by allowing graphical symbols to be directly entered by a user, avoiding the

13

need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

49.     The advancement claimed in the claims of the '870 Patent further includes, *inter alia*, an instant messaging terminal and method that, after loss of a network connection, automatically searches for a new connection and displays the conversation histories that were active when the network connection was lost.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  Indeed, such functionality would have run counter to the state of the art due to concerns about the impact on battery life. This claimed capability represented a significant advance in computer functionality.  For example, the claimed capability does not depend on user instruction to locate a connection after connection loss.  Moreover, the claimed capability of displaying active conversation histories for active conversations terminated by loss of network connection improves upon the state of the art, in which such conversation histories were typically lost upon termination of the user's network connection.

50.     The advancement claimed in the claims of the '870 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a plurality of keys for graphical symbols, each graphical symbol key including indicia identifying the graphical symbol generated by depressing the key bearing the indicia.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate

14

a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

51.     The advancement claimed in the claims of the '870 Patent further includes, *inter alia*, an instant messaging terminal and method that includes at least one programmable key associated with a set of characters corresponding to a graphical symbol supported by an instant messaging service provider.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

52.     The advancement claimed in the claims of the '870 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that stores a profile containing network settings for a network communicating with the communications module and the wireless transceiver through an access point.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention.  This claimed capability further improves computer operation because it permits, for example, the handheld terminal to connect automatically to a network corresponding to a stored profile without user intervention.  *See* Exhibit "A," '870 Patent at 5:20-31.

53.     The advancement claimed in the claims of the '870 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that includes an

audio player for generating sound from a downloaded file.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  Moreover, the provision of this capability in the claimed handheld terminal improved the operation of existing handheld terminals by, for example, allowing users to listen to music while exchanging instant messages (including generating/entering textual characters and graphical symbols using the data entry device) using a single handheld terminal.

54.     The advancement claimed in the claims of the '870 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that generates sound from files received from an Internet radio station through a wireless, Internet protocol access point.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  The provision of this capability in the claimed handheld terminal improved the operation of existing handheld terminals by, for example, allowing users to listen to sound files from an Internet radio station while exchanging instant messages (including generating/entering textual characters and graphical symbols using the data entry device) using a single handheld terminal.

### The Inventions Claimed In The '870 Patent Were Not Well-Understood, Routine, Or Conventional

55.     Prior to Zipit's invention, instant messaging primarily transpired with desktop computers.

56.     Prior to Zipit's invention, text messages were sent over a carrier's cellular network using SMS.  Users sending and receiving text messages typically were charged for each text, including at rates of $0.20/text or $20/month.

16

57.     Zipit's technology allowed instant messaging by a handheld instant messaging terminal using Wi-Fi, avoiding the expense of texting and the need to share a desktop computer for instant messaging.

58.     Zipit's patented and claimed technology allowed mobile handheld devices to directly connect to a Wi-Fi access point without using an intermediate protocol in order to send instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi, instead of the cellular network.

59.     No claims of the '870 Patent are unpatentable under §103.  In addition, the patentability of the claims of the '870 Patent is confirmed by the overwhelming evidence of widespread acclaim and industry praise that Patentee's "Zippy" and "Z2" devices received.  Due to the several awards, newspaper stories, television stories, and online articles regarding Zipit's "Zippy" and "Z2" devices, including for example: (i) Time Magazine's "The Most Amazing Inventions of 2005" Award, which was awarded to Zipit Wireless, Inc. for its "Zippy" device, (ii) the 2005 Chicago Tribune article, which declares that "Zipit Is King Of Messengers," and (iii) PC Magazine's "Winner" of its 2007 "Best of Show" award in the category of "Portable Gear," which was awarded to Zipit for its "Z2" device, received widespread acclaim.

60.     A nexus exists between Zipit's "Zippy" device and the claims of the '870 Patent.

61.     A nexus also exists between Zipit's acclaimed "Z2" device and the claims of the '870 Patent.

## Zipit's U.S. Patent No. 7,894,837 Patent

62.     On February 22, 2011, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,894,837, entitled "Instant Messaging Terminal Adapted

For Wireless Communication Access Points."  A true and correct copy of U.S. Patent No. 7,894,837 is attached hereto as Exhibit "C."

63.     Zipit is the owner, by assignment, of all right, title, and interest in and to U.S. Patent No. 7,894,837 (hereinafter the "'837 Patent"), including the right to sue for past, present, and future patent infringement, and to collect past, present, and future damages.

64.     The '837 Patent complies with the Patent Act, including 35 U.S.C. §101, 35 U.S.C. §102, 35 U.S.C. § 103, and 35 U.S.C. §112.

65.     Each and every claim of the '837 Patent is valid and enforceable.

66.     The '837 patent and its claims are entitled to the benefit of the filing date of the '870 patent (May 14, 2004) and also the date upon which Zipit filed its provisional patent application (December 23, 2003).

67.     As the invention(s) claimed in the '837 patent were conceived no later than April 2003, the claims of the '837 patent are further entitled to a priority date of no later than April 2003.

**IPR2014-01506**

68.     On March 30, 2015, the PTAB instituted an IPR of the '837 patent.

69.     On June 22, 2015, Zipit filed its "Patent Owner's Response Under 37 C.F.R. §42.120."

70.     On March 29, 2016, the PTAB issued a Final Decision that confirmed the patentability of all claims of the '837 Patent in IPR2014-01506.

71.     All papers and pleadings filed with the PTAB for IPR2014-01506 are part of the prosecution history of the '837 Patent.  Due to their size and volume, the papers and pleadings filed with the PTAB for IPR2014-01506 are incorporated by reference.

**IPR2019-01568**

72.     On August 30, 2019, Google LLC *et al*. filed a Petition For *Inter Partes* Review of the '837 Patent, IPR2019-01568.

73.     On June 2, 2020, Zipit filed a Response to the Petition, requesting the PTAB to deny the Petition.

74.     All papers and pleadings filed with the PTAB for IPR2019-01568 are part of the prosecution history of the '837 Patent.  Due to their size and volume, the papers and pleadings filed with the PTAB for IPR2019-01568 are incorporated by reference.

**Zipit's '837 Patent Is Not Abstract**

75.     The claims of the '837 Patent are focused on an advance over the prior art such that their character as a whole is not directed to excluded subject matter, such as an abstract idea, or any other subject matter excluded under 35 U.S.C. §101.

76.     In fact, the PTAB determined that the combinations claimed in the claims of the '837 Patent were novel and nonobvious, as did the Patent Office during its initial review of the claims.

77.     The advancement claimed in the claims of the '837 Patent includes, *inter alia*, an instant messaging terminal and method that includes a housing, a display mounted in the housing, a data entry device that affords the generation of textual characters and graphical symbols, a wireless Internet protocol communications module, a wireless transceiver, and a control module that includes a processor for executing an application program to implement instant messaging and session protocols for a conversation.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  The claimed

combination also improved the operation of computer functionality, overcoming various failures with existing computing devices as discussed in the Background of the Invention and the Summary of the Invention.

78.   For example, providing the claimed combination in a handheld terminal (as opposed to a desktop, laptop, or PDA requiring external peripheral data entry and/or display devices) represented a significant advance in computer functionality, including generation of both textual characters and graphical symbols using a data entry device integrated into the handheld terminal.  This avoided the need for a platform to support the data entry device during data entry.  Furthermore, the claimed data entry device for generating textual characters and graphical symbols improved the efficiency of computing devices by allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

79.   The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a housing, a display mounted in the housing, a data entry device that affords the generation of textual characters and graphical symbols, a wireless Internet protocol communications module, a wireless transceiver, and a control module that includes a processor for executing an application program to implement at least one instant messaging protocol for generation of instant messaging data messages that are compatible with an instant messaging service.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  The claimed combination also improved the operation of computer functionality, overcoming various failures with existing

20

computing devices as discussed in the Background of the Invention and the Summary of the Invention.

80.     For example, providing the claimed combination in a handheld terminal (as opposed to a desktop, laptop, or PDA requiring external peripheral data entry and/or display devices) represented a significant advance in computer functionality, including generation of both textual characters and graphical symbols using a data entry device integrated into the handheld terminal.  This avoided the need for a platform to support the data entry device during data entry.  Furthermore, the claimed data entry device for generating textual characters and graphical symbols improved the efficiency of computing devices by allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

81.     The advancement claimed in the claims of the '837 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a plurality of keys for graphical symbols, each graphical symbol key including indicia identifying the graphical symbol generated by depressing the key bearing the indicia.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

82.     The advancement claimed in the claims of the '837 Patent further includes, *inter alia*, an instant messaging terminal and method that includes at least one programmable key associated with a set of characters corresponding to a graphical symbol supported by an instant messaging service provider.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

83.     The advancement claimed in the claims of the '837 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module to generate, in accordance with the at least one instant messaging protocol being implemented, a character sequence corresponding to a graphical symbol in response to the depression of the programmable key being depressed.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

84.     The advancement claimed in the claims of the '837 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that detects

beacons received by the wireless transceiver from a plurality of wireless network access points and prioritizes the detected beacons by strength of detected signal. Such a claimed combination does not exist in the prior art. Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention. This claimed capability improved the operation of a computing device because it, for example, facilitates connection to the strongest wireless network access point, thereby optimizing speed and reliability of instant messaging.

85.     The advancement claimed in the claims of the '837 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that stores a profile containing network settings for a network communicating with the communications module and the wireless transceiver through an access point in memory. Such a claimed combination does not exist in the prior art. Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention. This claimed capability further improves computer operation because it permits, for example, the handheld terminal to connect automatically to a network corresponding to a store profile without user intervention. *See* Exhibit "C," '837 patent at 5:5-15.

86.     The advancement claimed in the claims of the '837 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that includes an audio player for generating sound from a downloaded file. Such a claimed combination does not exist in the prior art. Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention. Moreover, the provision of this capability in the claimed handheld terminal improved the operation of existing handheld terminals by, for example, allowing users to listen to music while exchanging instant

messages (including generating/entering textual characters and graphical symbols using the data entry device) using a single handheld terminal.

87.     The advancement claimed in the claims of the '837 Patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that generates sound from files received from an Internet radio station through a wireless, Internet protocol access point. Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  The provision of this capability in the claimed handheld terminal improved the operation of existing handheld terminals by, for example, allowing users to listen to sound files from an Internet radio station while exchanging instant messages (including generating/entering textual characters and graphical symbols using the data entry device) using a single handheld terminal.

### The Inventions Claimed In The '837 Patent Were Not Well-Understood, Routine, Or Conventional

88.     Prior to Zipit's invention, handheld devices only allowed SMS text messaging over a carrier's cellular network.

89.     Prior to Zipit's invention, text messages were sent over a carrier's cellular network using SMS.  Users sending and receiving text messages typically were charged for each text, including at rates of $0.20/text or $20/month.

90.     Zipit's technology allowed instant messaging by a handheld mobile device using Wi-Fi, avoiding the expense of texting and the need to share a desktop computer for instant messaging.

91.     Zipit's patented and claimed technology allowed mobile handheld devices to directly connect to a Wi-Fi access point without using an intermediate protocol in order to send

instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi, instead of the cellular network.

92.     No claims of the '837 Patent are unpatentable under §103.  In addition, the patentability of the claims of the '837 Patent is confirmed by the overwhelming evidence of widespread acclaim and industry praise that Patentee's "Zippy" and "Z2" devices received. Zipit's "Zippy" and "Z2" devices received widespread acclaim, including several awards, newspaper stories, television stories, and online articles, including for example (i) Time Magazine's "The Most Amazing Inventions of 2005" Award, which was awarded to Zipit Wireless, Inc. for its "Zippy" device, (ii) the 2005 Chicago Tribune article, which declares that "Zipit Is King Of Messengers," and (iii) PC Magazine's "Winner" of its 2007 "Best of Show" award in the category of "Portable Gear," which was awarded to Zipit for its "Z2" device, Zipit's "Zippy" and "Z2" devices received widespread acclaim.

93.     A nexus exists between Zipit's "Zippy" device and the claims of the '837 Patent.

94.     A nexus also exists between Zipit's acclaimed "Z2" device and the claims of the '837 Patent.

**Zipit's Foreign Patents**

95.     Zipit also has been awarded related foreign patents.  In Europe (including Germany, Great Britain, and France), Zipit was awarded EP 1747619B1.  In Japan, Zipit was awarded JP 5031556.  And in Australia, Zipit was awarded AU 2009251161 B2.

**DEFENDANTS' INFRINGING INSTANT MESSAGING DEVICES**

96.     On information and belief, Defendants have and continue to offer for sale, sell, use, and import into the United States and this State smartphones with Wi-Fi capability that send

and receive instant messages comprising an emoji/graphical symbol (☺, ☹) ("Defendants'

infringing instant messaging devices").

97.     Some of Defendants' representative infringing instant messaging devices include,

but are not limited to:

| DEFENDANT | REPRESENTATIVE INFRINGING MODEL(S) |
|---|---|
| BLU Products, Inc. | Dash L5 LTE, Studio G4, G70 |
| Google LLC | Pixel, Pixel XL, Pixel 2 XL, Pixel 3 XL, Pixel 4 XL |
| Motorola Mobility LLC | Moto G5, Moto G6, Moto G7, Moto G8 |
| Nokia of America Corporation | Nokia 5, Nokia 6, Nokia 7 plus, Nokia 7.2, Nokia 5.3 |
| Panasonic Corporation of North America | P77, P85, P9, Eluga i7 |
| Sony Mobile Communications (USA) Inc. | Zperia E5, Xperia XZ Premium, Xperia 10 |
| TTE Technology, Inc. (d/b/a TCL North America and TCL USA) | TCL Plex, TCL 10L, TCL 10 Pro |

98.     Defendants' infringing instant messaging devices are specifically designed to: (i)

use an Android operating system; (ii) run an instant messaging application; (iii) send and receive

instant messages; (iv) access the Google Play store; and (v) download an instant messaging

application.

99.     Some of Defendants' infringing instant messaging devices are smartphones that

are preloaded with one or more instant messaging application that is able to, and does, send an

instant message comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi.  Defendants provide

their customers and potential customers with instructions on how to use their instant messaging

devices in the United States and in this State.

100.     Some of Defendants' infringing instant messaging devices are smartphones that

are Wi-Fi capable that are not preloaded with an instant messaging application.  Instead of

preloading an instant messaging application on the smartphone, Defendants instruct their

customers to download an instant messaging application from an application store, such as for

example Google Play store.  Defendants provide their customers and potential customers with instructions on how to use these instant messaging devices in the United States.

101.    On information and belief, Defendants' infringing instant messaging devices are smartphones that have been and continue to be offered for sale, sold, used, and imported into the United States and this State preloaded with an instant messaging application, such as for example, "Hangouts."  The "Hangouts" application allows Defendants' smartphones to send instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi.

102.    On information and belief, Defendants knowingly and intentionally encourage end users to download third party instant messaging applications onto one or more of Defendants' smartphones so that an end user is able to use one or more of Defendants' smartphones to send instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi. On information and belief, some of these third-party instant messaging applications also may be preloaded onto Defendants' smartphones.  These instant messaging apps allow Defendants' smartphones to send instant messages comprising an emoji/graphical symbol over Wi-Fi.

103.    On information and belief, Defendants are stealing Zipit's patented technology to illegally make money in the United States and in this State.  On information and belief, Defendants illegally make money by, for example, (i) selling smartphones that could not otherwise be sold if they were unable to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (ii) selling instant messaging applications that allow a smartphone to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (iii) selling advertisements that are displayed during an end user's use of an instant messaging application that is able to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (iv) selling features in an instant

messaging application that allows a smartphone to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; and (v) selling information about end users who use an instant messaging application to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection.

## COUNT ONE: PATENT INFRINGEMENT
### (U.S. Patent No. 7,292,870)

104.    Zipit realleges and incorporates herein the preceding allegations of this Complaint as if fully set forth herein.

105.    Defendants have in the past and continue to infringe one or more claims of the '870 Patent, including but not necessarily limited to representative claims 20, 21, 24, 25, 26, 27, 28, 29, and 30 in violation of 35 U.S.C. §§271 (a), (b), and (c).  A representative infringement claim chart applicable to the accused products of all Defendants is attached as Exhibit "D."

106.    Defendants' infringing acts include, but are not necessarily limited to, Defendants' manufacture, use, offering for sale, sale, and importation of Wi-Fi-enabled instant messaging devices and methods, such as the above listed smartphones, that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using an instant messaging application that was preloaded onto Defendants' Wi-Fi enabled smartphone by Defendants, such as "Hangouts," and/or using a third party instant messaging application that have been downloaded onto one of the Defendants' Wi-Fi enabled smartphones, as instructed.

107.    Defendants' infringing smartphones include, but are not limited to, the list of Defendants' smartphones set forth above.

108.    As a non-limiting, representative example, Defendants' smartphones infringe claims 20, 21, 24, 25, 26, 27, 28, 29, and 30 of Zipit's '870 Patent because Defendants' smartphones generate and send an instant message that includes an emoji/graphical symbol using

Wi-Fi.  Defendants' smartphones further infringe claim 21 of Zipit's '870 Patent because Defendants' smartphones comprise a specific key that has an emoji/graphical symbol (☺) that is generated by depressing the key.

109.    Defendants have in the past and continue to indirectly infringe one or more claims of the '870 Patent in violation of 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing direct infringement by other persons, including patrons, customers, and end users, by offering for sale and/or selling Defendants' Wi-Fi enabled instant messaging devices that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendants' past or present instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendants' Wi-Fi enabled instant messaging devices, such as Defendants' smartphones, in the United States and this State without authority or license from Zipit and in a manner understood and intended to infringe Zipit's '870 Patent.

110.    Defendants instruct customers and potential customers who reside in this State how to send an instant message comprising an emoji/graphical symbol, such as ☺, ☹, ☺, over Wi-Fi using one of Defendants' smartphones.  For example, such instructions are in the form of on-line content and user manuals.

111.    Zipit provided Defendants with written notice of their infringement of the '870 Patent no later than the filing date of this Complaint.

112.    On information and belief, since receiving notice from Zipit Defendants have not changed their course of conduct, Defendants have not changed their infringing products, Defendants have not changed their infringing processes, and Defendants have not changed any of their instructions or supporting literature and materials due to Zipit's '870 Patent.

113. On information and belief, as Defendants deliberately avoided confirming their high probability of wrongdoing, Defendants have and continue to directly infringe, and induce the direct infringement of, one or more claims of the '870 Patent, with willful blindness.

114. Defendants also have in the past and continue to indirectly infringe one or more claims of the '870 Patent, in violation of 35 U.S.C. § 271(c) by actively, knowingly, and intentionally contributing to an underlying direct infringement by other persons, such as Defendants' patrons, customers, and end users, by offering for sale and/or selling Defendants' Wi-Fi enabled instant messaging devices that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendants' past or present instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendants' Wi-Fi enabled instant messaging devices, such as Defendants' smartphones, in the United States without authority or license from Zipit and in a manner understood and intended to infringe Zipit's '870 Patent.

115. Defendants' Wi-Fi enabled instant messaging devices that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendants' past or present instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendants' Wi-Fi enabled instant messaging devices, such as Defendants' smartphones are (i) a component and material part of the inventions claimed in one or more claims of the '870 Patent, (ii) knowingly and especially designed for use in infringing one or more claims of the '870 Patent, (iii) intended to be used to infringe one or more claims of the '870 Patent, and (iv) not a staple item of commerce suitable for substantial non-infringing use.

30

116.    On information and belief, as Defendants deliberately avoided confirming their high probability of wrongdoing, Defendants have and continue to infringe, and contribute to the direct infringement of one or more claims of the '870 Patent, with willful blindness.

117.    Customers who reside in this State and this District may purchase Defendants' Wi-Fi enabled instant messaging devices that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendants' past or present instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendants' Wi-Fi enabled instant messaging devices, such as Defendants' smartphones.

118.    Defendants instruct customers and potential customers who reside in this State how to send an instant message comprising an emoji/graphical symbol, such as ☺, ☹, ☺, over Wi-Fi using one of Defendants' smartphones.  For example, such instructions are in the form of on-line content and user manuals.

119.    On information and belief, since receiving notice from Zipit Defendants have not changed their course of conduct, Defendants have not changed their infringing products, Defendants have not changed their infringing processes, and Defendants have not changed any of their instructions or supporting literature and materials due to Zipit's '870 Patent.

120.    Defendants' infringement of the '870 Patent have been, and continue to be, objectively reckless, willful and deliberate, entitling Zipit to increased damages pursuant to 35 U.S.C. §284 and to attorneys' fees pursuant to 35 U.S.C. §285.

121.    Zipit is entitled to: (i) damages adequate to compensate it for Defendants' infringement of the '870 Patent, which amounts to, at a minimum, (i) a reasonable royalty; (ii) treble damages; (iii) attorneys' fees; (iv) costs; and (v) a permanent injunction.

## COUNT TWO: PATENT INFRINGEMENT
### (U.S. Patent No. 7,894,837)

122.    Zipit realleges and incorporates herein the preceding allegations of this Complaint as if fully set forth herein.

123.    Defendants have in the past and continue to infringe one or more claims of the '837 patent, including but not limited to representative claims 11, 12, 14, 15, 16, and 20 in violation of 35 U.S.C. §§271 (a), (b), and (c).  A representative infringement claim chart applicable to all Defendants' accused products is attached as Exhibit "E."

124.    Defendants' infringing acts include, but are not necessarily limited to, Defendants' manufacture, use, offering for sale, sale, and importation of Wi-Fi enabled instant messaging devices and methods, such as the above listed smartphones, that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using an instant messaging application that was preloaded onto Defendants' Wi-Fi enabled smartphone by Defendants, such as "Hangouts," and/or using a third party instant messaging application that has been downloaded onto one of the Defendants' Wi-Fi enabled smartphones, as instructed.

125.    Defendants' infringing smartphones include, but are not limited to, the list of Defendants' smartphones set forth above.

126.    As a non-limiting, representative example, Defendants' smartphones infringe at least claims 11, 12, 14, 15, 16, and 20 of Zipit's '837 patent because they generate and send an instant message that includes an emoji/graphical symbol using Wi-Fi.  On information and belief, Defendants' smartphones have been made, used, offered for sale, sold, and/or imported into the United States and this State.

127.    Defendants have in the past and continue to indirectly infringe one or more claims of the '837 Patent, in violation of 35 U.S.C. § 271(b) by actively, knowingly, and intentionally

inducing direct infringement by other persons, including patrons, customers, and end users, by

offering for sale and/or selling Defendants' Wi-Fi enabled instant messaging devices that

generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using

one of Defendants' past or present instant messaging applications, and/or a third party instant

messaging application, that has been loaded onto one of Defendants' Wi-Fi enabled instant

messaging devices, such as Defendants' smartphones, in the United States without authority or

license from Zipit and in a manner understood and intended to infringe Zipit's '837 Patent.

128.    Defendants instruct customers and potential customers who reside in this State

how to send an instant message comprising an emoji/graphical symbol, such as ☺, ☹, ☺, over

Wi-Fi using one of Defendants' smartphones.  For example, such instructions are in the form of

on-line content and user manuals.

129.    Zipit provided Defendants with written notice of their infringement of the '837

Patent no later than the filing date of this Complaint.  At the same time, Zipit also told

Defendants that Defendants have in the past infringed and continue to infringe the '837 Patent.

As a result, Defendants had notice of their alleged infringement of the '837 Patent.

130.    On information and belief, since receiving notice from Zipit Defendants have not

changed their course of conduct, Defendants have not changed their infringing products,

Defendants have not changed their infringing processes, and Defendants have not changed any of

their instructions or supporting literature and materials due to Zipit's '837 Patent.

131.    On information and belief, as Defendants deliberately avoided confirming their

high probability of wrongdoing, Defendants have and continue to directly infringe, and induce

the direct infringement of, one or more claims of the '837 Patent, with willful blindness.

132.    Defendants also have in the past and continue to indirectly infringe one or more claims of the '837 Patent, in violation of 35 U.S.C. § 271(c) by actively, knowingly, and intentionally contributing to an underlying direct infringement by other persons, such as Defendants' patrons, customers, and end users, by offering for sale and/or selling Defendants' Wi-Fi enabled instant messaging devices that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendants' past or present instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendants' Wi-Fi enabled instant messaging devices, such as Defendants' smartphones, in the United States without authority or license from Zipit and in a manner understood and intended to infringe Zipit's '837 Patent.

133.    Defendants' Wi-Fi enabled instant messaging devices that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendants' past or present instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendants' Wi-Fi enabled instant messaging devices, such as Defendants' smartphones are (i) a component and material part of the inventions claimed in one or more claims of the '837 Patent, (ii) knowingly and especially designed for use in infringing one or more claims of the '837 Patent, (iii) intended to be used to infringe one or more claims of the '837 Patent, and (iv) not a staple item of commerce suitable for substantial non-infringing use.

134.    On information and belief, as Defendants deliberately avoided confirming their high probability of wrongdoing, Defendants have and continue to infringe, and contribute to the direct infringement of one or more claims of the '837 Patent, with willful blindness.

135.    Customers who reside in this State, and this District, may purchase Defendants' Wi-Fi enabled instant messaging devices that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendants' past or present instant messaging applications, and/or a third party instant messaging application, that have been loaded onto one of Defendants' Wi-Fi enabled instant messaging devices, such as Defendants' smartphones.

136.    Defendants instruct customers and potential customers who reside in this State, including this judicial district, how to send an instant message comprising an emoji/graphical symbol, such as ☺, ☹, ☺, over Wi-Fi using one of Defendants' smartphones.  For example, such instructions are in the form of on-line content and user manuals.

137.    On information and belief, since receiving notice from Zipit Defendants have not changed their course of conduct, Defendants have not changed their infringing products, Defendants have not changed their infringing processes, and Defendants have not changed any of their instructions or supporting literature and materials due to Zipit's '837 Patent.

138.    Defendants' infringement of the '837 Patent has been, and continues to be, objectively reckless, willful and deliberate, entitling Zipit to increased damages pursuant to 35 U.S.C. §284 and to attorneys' fees pursuant to 35 U.S.C. §285.

139.    Zipit is entitled to: (i) damages adequate to compensate it for Defendants' infringement of the '837 Patent, which amounts to, at a minimum, a reasonable royalty; (ii) Zipit's lost profits; (iii) treble damages; (iv) attorneys' fees; (v) costs; and (vi) a permanent injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Zipit seeks the following relief:

a.   That Defendants are enjoined from further infringement of Zipit's '870 Patent and Zipit's '837 Patent pursuant to 35 U.S.C. §283;

b.   That Defendants are ordered to pay damages adequate to compensate Zipit for each Defendant's infringement of Zipit's '870 Patent and Zipit's '837 Patent pursuant to 35 U.S.C. §284;

c.   That Defendants are ordered to pay Zipit Zipit's lost profits due to each Defendant's infringement of Zipit's '870 Patent and Zipit's '837 Patent pursuant to 35 U.S.C. §284;

d.   That Defendants are ordered to pay Zipit treble damages pursuant to 35 U.S.C. §284;

e.   That Defendants are ordered to pay prejudgment interest pursuant to 35 U.S.C. §284;

f.   That Defendants are ordered to pay all costs associated with this action pursuant to 35 U.S.C. §284;

g.   That Defendants are ordered to pay Zipit's attorneys' fees pursuant to 35 U.S.C. §285;

h.   That Zipit be granted such other and additional relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Zipit demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted, this 4th day of June, 2020.

/s/ Stamatios Stamoulis

STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE  19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com

Stephen R. Risley (pro hac vice application
to be filed)
KENT & RISLEY LLC
5755 North Point Parkway, Suite 57
Alpharetta, GA 30022
Telephone: (404) 585-2101
Facsimile: (678) 389-9402
Email: steverisley@kentrisley.com

Cortney S. Alexander (pro hac vice
application to be filed)
KENT & RISLEY LLC
5755 North Point Parkway, Suite 57
Alpharetta, GA 30022
Telephone: (404) 855-3867
Facsimile: (770) 462-3299
Email: cortneyalexander@kentrisley.com

Attorneys for Plaintiff
Zipit Wireless, Inc.